# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

**SHARON DAVES GOODWILL,**       )
                                )
     **Plaintiff,**              )
                                )    Civil Action Number
**vs.**                         )    **4:18-cv-00892-AKK**
                                )
**ANDREW M. SAUL, Commissioner**  )
**of the Social Security**        )
**Administration,**[1]            )
                                )
     **Defendant.**              )

## MEMORANDUM OPINION

Sharon Daves Goodwill brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). For the reasons explained below, the court finds that the determination of the Administrative Law Judge ("ALJ") that Goodwill can perform medium work with few limitations, which the ALJ does not fully explain how he reached and which has become the final decision by the Commissioner, is not supported by substantial evidence. Therefore, the court reverses the decision denying benefits and remands to the ALJ for further proceedings.

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 17, 2019, and replaces Nancy Berryhill as the defendant in this action pursuant to Federal Rule of Civil Procedure 25(d)(1).

# I.   PROCEDURAL HISTORY

Goodwill filed an application for disability insurance benefits on December 19, 2013, alleging disability beginning June 1, 2009. R. 259. The SSA denied Goodwill's applications. R. 101-02. After a formal hearing held at Goodwill's request, R. 64, 94, the ALJ found Goodwill not disabled, R. 112-27. The Appeals Council remanded the case with instructions to the ALJ, in part: (1) to obtain additional evidence concerning impairments, (2) if necessary, obtain evidence from a medical expert to clarify the nature, severity, limiting effects and, as applicable, onset date of the impairments, and (3) give further consideration to the maximum residual functional capacity ("RFC") for the entire period at issue. R. 133. Following a second hearing, the ALJ found Goodwill again not disabled. R. 20-37. The Appeals Council denied review, *see* R. 1-6, making the ALJ's decision the final decision of the Commissioner. Goodwill now seeks review in this court pursuant to 42 U.S.C. § 405(g).[2] Doc. 1.

# II.   STANDARD OF REVIEW

The only issues before this court are whether the record contains substantial

---

[2] Goodwill also filed pursuant to 5 U.S.C. § 706. Doc. 1 at 1. The Commissioner is correct that this court lacks subject matter jurisdiction under § 706. *See* Doc. 2 at 1. The Administrative Procedure Act does not provide an independent grant of subject matter jurisdiction to review claims under the Social Security Act. *Califano v. Sanders*, 430 U.S. 99, 97 (1977). Thus, the court's jurisdiction over Goodwill's claims must be based solely on the provisions of the Social Security Act, 42 U.S.C.A. 405(g). *See Ellis v. Schweiker*, 662 F.2d 419 (5th Cir. 1981); *Baxter v. Schweiker*, 538 F. Supp. 343, 346 (N.D. Ga. 1982).

evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "'reasonable and supported by substantial evidence.'" *Id.* (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "'[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against those findings. *See id.* While judicial review of the ALJ's findings is limited in scope, it "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

In contrast to the deferential review accorded the Commissioner's factual findings, "conclusions of law, including applicable review standards, are not

presumed valid" and are subject to de novo review. *Martin*, 894 F.2d at 1529. The Commissioner's failure to "apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed" requires reversal. *Id.*

## III. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(1). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). Specifically, the ALJ must determine in sequence:

(1)     whether the claimant is currently unemployed;

(2)     whether the claimant has a severe impairment;

(3)     whether the impairment meets or equals one listed by the Secretary;

(4)     whether the claimant is unable to perform his or her past work; and

(5)     whether the claimant is unable to perform any work in the national economy.

*See McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* (citing 20 C.F.R. § 416.920(a)-(f)). "Once [a] finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). However, the claimant ultimately bears the burden of proving that she is disabled, and, "consequently [s]he is responsible for producing evidence in support of he[r] claim." *See, e.g.*, *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.945(a), (c)).

## IV.   THE ALJ'S DECISION

In performing the five-step analysis, the ALJ first determined that Goodwill had not engaged in substantial gainful activity since August 7, 2012, the amended alleged onset date, through the date last insured, December 31, 2013. R. 23. Accordingly, the ALJ proceeded to Step Two, finding that Goodwill had the following severe impairments: "mild degenerative disc disease of the lumbar spine and migraine headaches." *Id.* The ALJ then proceeded to Step Three and found that none of Goodwill's impairments, considered singly or in combination, "met or

medically equal[ed] the severity of one of the listed impairments in 20 CFR Part

404, Subpart P, Appendix 1 . . . ." R. 25.

> Next, the ALJ determined Goodwill's residual functional capacity ("RFC"):

> [Goodwill] has the [RFC] to perform medium work as defined in 20 CFR §§ 404.1567(c) except [Goodwill] can frequently use foot controls bilaterally and frequently use bilateral hand controls. [Goodwill] can frequently reach overhead bilaterally as well as frequently reach in all over directions bilaterally. [Goodwill] can frequently climb ramps and stairs but never climb ladders or scaffolds. [Goodwill] can frequently balance, stoop, crouch, kneel, and crawl. In addition to normal workday breaks, [Goodwill] would be off task five percent of an eight-hour workday (non-consecutive minutes).

R. 26. Based on Goodwill's RFC, and relying on the testimony of a vocational

expert ("VE"), the ALJ found at Step Four that Goodwill "was capable of performing

past relevant work as a registered nurse, a secondary school teacher, a principal, and

in a composite job as a school administrator, which consisted of two job descriptions:

a compliance director and an education specialist." R. 29. As an alternative basis,

the ALJ proceeded to Step Five, where, based on Goodwill's RFC, as well as her

age, education, and prior work experience, and relying on the testimony of the VE,

the ALJ concluded that "there were jobs that existed in significant numbers in the

national economy that [Goodwill] also could have performed . . . ." R. 30. As a result,

the ALJ concluded that Goodwill "was not under disability . . . at any time from

August 7, 2012 . . . through December 31, 2013, the date last insured." R. 31.

## V. ANALYSIS

Goodwill argues that the ALJ (1) failed to accord proper weight to the opinions of a treating physician, (2) substituted his own opinion for that of an examining physician, (3) failed to properly determine the onset date pursuant to Social Security Ruling 83-20, (4) improperly drew adverse inferences from lack of medical treatment, (5) issued a decision that is not based in substantial evidence,[3] and (6) is predisposed against favorable disability awards. Doc. 6 at 1-2. The court addresses each contention in turn.

### A.

Goodwill contends first that the ALJ failed to properly consider and weigh the opinion of Dr. Robert Puckett, her primary care physician. Doc. 6 at 35-40. An ALJ must consider multiple factors in determining how much weight to assign to a physician's opinion, including whether the physician examined the claimant, whether she treated the claimant, the evidence the physician presents to support her opinion, whether the opinion is consistent with the record as a whole, and the physician's specialty. 20 C.F.R. § 404.1527(c). A treating physician's opinion is

---

[3] Goodwill makes two claims regarding whether substantial evidence supported the ALJ's decision. The first attacks the hypothetical questions the ALJ posed to the VE in assessing Goodwill's RFC, doc. 6 at 46-48, and the second alleges the ALJ failed to apply proper legal standards in assessing whether Goodwill could perform past work, *id.* at 48-54. However, the second claim contains no analysis and is merely a recitation and case law. Because Goodwill makes no argument in this claim, the court will evaluate the ALJ's analysis of Goodwill's ability to do both past and present work in this section.

generally entitled to more weight than a non-treating physician's opinion, and an ALJ must give good reasons for the weight she gives to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2). "Absent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). However, an ALJ may discount a treating physician's opinion when the opinion is conclusory, the physician fails to support it with objective medical evidence, it is inconsistent with the medical record as a whole, or the evidence otherwise supports a contrary finding. *See* 20 C.F.R. § 404.1527(c); *Hernandez v. Soc. Sec. Admin., Comm'r*, 761 F. App'x 901, 903 (11th Cir. 2019) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004)). Moreover, although a physician's opinion is relevant evidence, "[a] claimant's [RFC] is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive." *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) (citing 20 C.F.R. § 404.1527(d)(2)).

The ALJ found that Dr. Puckett's opinion was entitled to little weight, reasoning the opinion "[wa]s not consistent with the record prior to the date last insured; [Goodwill] was not diagnosed with rheumatoid arthritis in his records, and his own records show no positive straight leg raise or reports of atrophy." R. 29. To

support this finding, the ALJ referenced Dr. Puckett's examination in June 2014 that found Goodwill "could only stand, walk, and sit for fifteen minutes at a time and would need to prop her feet up at least five hours a day," and a second examination in January 2017, in which Dr. Puckett "indicat[ed] [Goodwill] would be off task 40-60% of the workday and would miss five days of work a month [and] opined these limitations would be cause[d] by [Goodwill's] osteoarthritis." R. 28. The ALJ noted that Dr. Puckett only referred Goodwill to a rheumatologist in January 2017, three years after the date last insured, *id.*, and that Dr. Puckett's "current treating records, though after the date last insured, show[ed] his treatment for [Goodwill's] low back pain ha[d] not changed and [wa]s still strictly medication management." *Id.*

The substantial evidence supports the ALJ's decision to afford little weight to Dr. Puckett's opinions. Although Dr. Puckett opined after his 2014 and 2017 examinations that Goodwill could not stand, sit, walk, or perform any task for more than fifteen minutes without rest, due to osteoarthritis and rheumatoid arthritis, R. 601-02; R. 683-84, neither of these examinations detailed any objective medical evidence of Goodwill's limitations. Dr. Puckett's treatment records also do not provide support for his opinions. A review of Goodwill's medical history reveals several mentions of osteoarthritis dating back to 2008, *see* R. 495-99, 502, 561, and a diagnosis of mild degenerative disc disease and degenerative joint changes based on imaging performed in August 2012, R. 530. However, as the ALJ noted, Dr.

Puckett did not change his treatment strategy between August 2012 and Goodwill's last insured date in 2013. R. 852-58. His care extended solely to medication management until 2017 when he referred Goodwill to a rheumatologist. *Id.*

The record as a whole also belies Dr. Puckett's 2014 and 2017 evaluations. After Goodwill's amended alleged onset date in 2012, Dr. John Brickley, Goodwill's chiropractor, reported that her pain improved with treatment. R. 495-99. And, after lodging a positive straight leg raise test with Dr. Jay Ripka in 2015, R. 639, Goodwill had a negative test in 2017, R. 856. Moreover, Goodwill's own testimony undermines Dr. Puckett's findings. For example, during her hearing in 2015, Goodwill stated that she made five or fewer trips to the grocery store each week, and that her driving habits were "about the same" as they were in 2013. R. 71. At her 2017 hearing, Goodwill characterized her driving in 2013 as two to three twelve-mile trips to the grocery store each week. R. 45. And, in a 2014 survey, Goodwill stated she was able to bathe and dress, as well as prepare meals, fold laundry, and dust the house. R. 321-28. She claimed she used a cane, R. 327, and that she enjoyed photographing birds from her bedroom window, albeit with "a tripod so [she] c[ould] sit in a chair," R. 325. Goodwill's own report is inconsistent with Dr. Puckett's findings, and an ALJ need not give a treating physician's opinion considerable weight if the applicant's own testimony regarding her daily activities contradicts that opinion. *See Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004).

Finally, an ALJ may reject a medical opinion that is "so brief and conclusory that it lacks persuasive weight . . . ." *Hudson v. Hackler*, 755 F.2d 781, 784 (11th Cir. 1985). Dr. Puckett's 2014 and 2017 evaluations consist of checkmarks on a survey prepared by Goodwill's representative, with no accompanying analysis or evidence. *See* R. 601-02, 683-84. The conclusory nature provides good cause for the ALJ to give the opinions contained in them minimal weight. *See Winschel*, 631 F.3d at 1179.

To close, based on Dr. Puckett's treatment notes, the medical record as a whole, and Goodwill's own testimony, the substantial evidence supported the ALJ giving Dr. Puckett's opinion little weight.

**B.**

Goodwill next contends that the ALJ failed to properly consider and weigh the opinion of Dr. Ripka, a consultative examining physician. Doc. 6 at 40-41. At issue here is an independent medical evaluation ("IME") Dr. Ripka performed at the request of Goodwill's representative in 2015. R. 635-43. As part of the evaluation, Dr. Ripka reviewed Goodwill's medical, physical, social, and family history, as well as her daily activities before performing a physical examination. *Id.* During the physical examination, Dr. Ripka performed a straight leg raise test, the results of which were positive for sciatic stretch. R. 639. Based on the IME, Dr. Ripka stated that Goodwill's problems "date[d] back 7 years" and "from [his] findings and history

that this was probably a beginning of rheumatoid arthritis affecting her body and creating problems with her hip and hands." R. 639. He expressed uncertainty as to "how much this is adding to the pain of her back and neck." *Id*. Finally, Dr. Ripka indicated in a Physical Capacities Form that Goodwill could not sit, stand, walk, or perform any activity without rest for more than fifteen minutes and that she would need "to be lying down, sleeping, or sitting with legs propped at waist level or above" for six hours of an eight-hour work day. R. 641.

The ALJ considered Dr. Ripka's opinion, but gave it no weight, reasoning that "[Dr. Ripka's] examination was performed almost two years after the date last insured and is inconsistent with the treating records of the time." R. 29. The ALJ noted that Dr. Ripka found a positive straight leg raise and limited strength in her bilateral upper limbs as well as her legs, but concluded "[t]hese findings [we]re simply not supported by [Goodwill's] treating records and [we]re not representative of [her] functioning as of the date last insured." R. 28. This explanation is consistent with the requirement that an ALJ must "state with particularity the weight he gave different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179 (quoting *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).

Goodwill challenges this decision, arguing that the ALJ improperly substituted his judgment for that of Dr. Ripka. *See* doc. 6 at 40-41. As an initial matter, the ALJ owes no deference to the opinions of a one-time examining

physician. *See Eyre v. Comm'r of Soc. Sec.*, 586 Fed. Appx. 521, 523 (11th Cir. 2014) (citing *McSwain v. Bowen,* 814 F.2d 617, 619 (11th Cir. 1987)). And, while an ALJ cannot substitute his judgment for that of an examining physician when determining the weight to assign the physician's opinion,[4] the ALJ also has no obligation to blindly accept opinions that the record does not support. Dr. Ripka evaluated Goodwill almost two years after her last insured date, and therefore his insights into Goodwill's physical state in 2015 shed little light on her impairment as of 2013. In fact, Dr. Ripka's own notes demonstrate his uncertainty as to the extent Goodwill's back pain is related to arthritis, and much of his evaluation is based on Goodwill's own reports of her condition. *See* R. 635-43. Moreover, as discussed above and as noted by the ALJ, the record reveals that Goodwill's self-reported activities and treatment records indicate her limitation were not as severe as Dr. Ripka indicated in 2015. *See* p. 10-12, *supra. See also* R. 28-31. In other words, the record supports the ALJ's decision, and the ALJ did not rely only on or substitute his own judgment when discounting Dr. Ripka's opinion.

## C.

---

[4] *See, e.g.*, *Graham v. Bowen*, 786 F.2d 1113, 1115 (11th Cir. 1986) (reversing the ALJ's determination where the ALJ "improperly substituted his conclusion that appellant 'appeared moderately handicapped in her gait' for the medical evidence presented."); *Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986) (finding the ALJ improperly "rejected the opinions of the treating physician not even on the basis of a differing opinion by another doctor, but rather because the ALJ himself reached a different conclusion after viewing the medical records."); *Davis v. Barnhart*, 377 F. Supp. 2d 1160, 1164 (N.D. Ala. 2005) (citing *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992) (Johnson, J., concurring)).

Goodwill takes issue also with the ALJ's rejection of Drs. Puckett and Ripka's suggested disability onset date of November 11, 2010. Doc. 6 at 41-43. She argues that the ALJ should have called a medical advisor to ascertain when her disability began. *Id.* Social Security Ruling 83–20 defines the disability onset date as "the first day an individual is disabled as defined in the Act and the regulations." SSR 83–20. When the alleged disability is progressive, "[t]he onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in . . . gainful activity," and "[c]onvincing rationale must be given for the date selected." *Id.* SSR 83-20 contemplates instances where "it is . . . impossible to obtain medical evidence establishing the precise date an impairment became disabling," and the ALJ must infer the onset of disability. SSR 83-20. But the Eleventh Circuit has noted, albeit in two unpublished opinions, that SSR 83-20 applies only in situations where the ALJ has made a finding of disability "and it is then necessary to determine when the disability began." *Caces v. Comm'r, Soc. Sec. Admin.*, 560 F. App'x 936, 939 (11th Cir. 2014) (affirming the ALJ's decision where "the ALJ found that [the claimant] was not disabled prior to the date last insured [and] that finding [wa]s supported by evidence"); *Klawinski*, 391 F. App'x at 776 ("SSR 83-20 only require[s] the ALJ to obtain a medical expert in certain instances to determine a disability onset date after a finding of disability."). Because the ALJ did not find Goodwill disabled, *see* R.

20-32, the reliance on SSR 83-20 is misplaced. Consequently, the ALJ was not required to determine the onset date or call a medical expert in making that determination.

## D.

Goodwill contends that the ALJ based his decision in part on improper adverse inferences made from Goodwill's failure to obtain medical treatment. Goodwill offers a block quotation from the ALJ's 2015 decision, which she attributes inadvertently to the ALJ's 2017 decision. Doc. 6 at 44. The Appeals Council vacated the ALJ's 2015 decision and remanded the case back to the ALJ. R. 131-32. As a result, the 2015 decision is not the final decision of the Commissioner and is not before this court. *See* R. 131. Therefore, the language Goodwill cites is immaterial to this court's review of the 2017 decision.

## E.

Goodwill next contends that the ALJ's decision is not based on substantial evidence. Allegedly, the ALJ failed to apply proper legal standards for determining whether Goodwill could perform past work, doc. 6 at 48-54, and posed hypothetical questions to the VE that failed to account for all of Goodwill's limitations and impairments, *id.* at 46-48.

At the fourth step of the evaluation process, the ALJ must "assess[] the claimant's [RFC] and measure[] whether [she] can perform past relevant work

despite . . . her impairment." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002); 20 C.F.R. § 404.1512(b)(3). If the claimant has no work history, the ALJ must show that other jobs exist in significant numbers in the national economy that the claimant can perform. *Id.* The ALJ may satisfy both burdens by relying on the testimony of a VE. *Wilson*, 284 F.3d at 1227 (citing *Wolfe v. Chater*, 86 F.3d 1072, 1077-78 (11th Cir. 1996)). But, "[i]n order for a [VE]'s testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id.* (citing *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999)).

The ALJ found that Goodwill has the RFC to perform medium work. R. 26. Medium work involves "lifting no more than 50 pounds at a time with frequent lifting and carrying of objects that weigh 25 pounds" as well as walking or standing for "approximately 6 hours in an 8-hour workday [and] frequent bending [or] stooping [requiring] [f]lexibility of the knees as well as the torso." SSR 83-10; *Davis v. Barnhart*, 186 F. App'x 965, 965 (11th Cir. 2006). Generally, courts in this circuit have affirmed an ALJ's determination that a claimant had the RFC to perform medium work when a physician's opinion corroborated that RFC.[5] In Goodwill's

---

[5] *See, e.g.*, *Davis*, 186 F. App'x at 965 (holding that substantial evidence supported the RFC where medical consultants concurred); *Lindsey v. Barnhart Freeman v. Comm'r of Soc. Sec.*, 161 F. App'x 862, 869 n.9 (11th Cir. 2006) (a doctor's assessment affirming the RFC constituted substantial evidence); *Davidson v. Halter*, 171 F. Supp. 2d 1326, 1329 n.9 (S.D. Ala. 2001) (two examining and two treating physicians supported the ALJ's finding).

case, no physician opined that Goodwill could perform medium work. *See* R. 494-98, 499-530, 635-43. And, "[t]he remaining record evidence does not provide substantial evidence for the finding that [Goodwill] was capable of performing medium work." *Siverio v. Comm'r of Soc. Sec.*, 461 F. App'x 869, 872 (11th Cir. 2012). Put simply, on this current record, "there is nothing [therein] that could have reasonably led the ALJ to conclude that [Goodwill] could occasionally lift fifty pounds and frequently lift twenty-five pounds, and thus perform medium work."[6] *Id.* Thus, it appears the ALJ may have primarily relied on the basis of Goodwill's conservative treatment regimen and an incomplete picture of her self-reported daily activities to conclude that Goodwill could perform medium work. In any event, it is not clear from the record how the ALJ reached this conclusion, and "[t]he ALJ must state the grounds for his decision with clarity to enable [the court] to conduct meaningful review." *See Hanna v. Astrue*, 395 F. App'x 634, 636 (11th Cir. 2010) (remanding for lack of substantial evidence supporting the RFC). Therefore, remand is warranted.

The court notes also that in making the medium work finding, the ALJ

_____

[6] *See, e.g., Stone v. Astrue*, 2012 WL 3288718, at *8 (S.D. Ala. Aug. 10, 2012); *Saunders v. Astrue*, 2012 WL 997222, at *5 (M.D.Ala. Mar. 23, 2012) ("It is unclear how the ALJ reached the conclusion that Plaintiff 'can lift and carry up to fifty pounds occasionally and twenty-five pounds frequently' and sit, stand and/or walk for six hours in an eight hour workday, [ ] when the record does not include an evaluation of Plaintiff's ability to perform work activities such as sitting, standing, walking, lifting, bending, or carrying.").

repeatedly references Goodwill's conservative treatment regimen.[7] R. 27-29; *see* R. 502-71, 762-803, 852-72. An ALJ is free to review treatment plans when assessing subjective complaints of pain.[8] However, an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering . . . information in the case record, that may explain [the] failure to seek medical treatment [including] [t]he individual['s ability] to afford treatment and . . . access to free or low-cost medical services." SSR 96-7P, 1996 WL 374186. And, while a claimant's "refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability[,] poverty excuses noncompliance." *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (citing *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988)

As the ALJ found, Goodwill's medical treatment regimen during the period between her amended alleged onset date and her last date insured consisted solely of

---

[7] *See* R. 27-28 ("The claimant sought chiropractic treatment in 2013 but has not sought an orthopedic or neurological consult . . . [Dr. Puckett's] treatment for the claimant's low back pain has not changed and is still strictly medication management . . . the claimant was only seen by [Dr. Brickley] from January 2013 to May 2013 and did not again return with complaints of back pain until August 2014 . . . The claimant was not participating in any treatment for her back pain other than medication management . . ."

[8] *See* 20 C.F.R. § 416.929(c)(3)(iv)-(v); *Pennington v. Comm'r of Soc. Sec.*, 652 F. App'x 862, 873 (11th Cir. 2016) (holding ALJ properly considered conservative treatment regimen to undermine claimant's testimony); *Harrison v. Comm'r of Soc. Sec.*, 569 F. App'x 874, 877 (11th Cir. 2014) (holding a treating physician's "conservative and routine" treatment regimen in which she merely "prescribed medications" and "never recommended more aggressive treatment" suggested the claimant was not disabled); *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (noting that conservative medical treatment discredited a claimant's testimony as to his pain).

medical management. *See* R. 502-71, 762-803, 852-72. But the record also suggests that Goodwill's medical treatment was conservative in part because her finances prevented her from undertaking the measures her doctors recommended.[9] Despite this evidence, the ALJ's opinion does not assess Goodwill's indigence and whether it accounted for the conservative treatment before basing his RFC determination, in part, on her conservative treatment.

The ALJ also bases his RFC assignment on Goodwill's daily activities, reasoning that because Goodwill "[wa]s independent in her personal care and grooming, cook[ed] meals, c[ould] drive a car short distances, d[id] her grocery shopping independently . . . c[ould] do some household chores [and] like[d] to photograph birds in her backyard," her activities "[we]re not as limited as one would

_____

[9] During the hearing for the now-vacated 2015 decision; Goodwill offered the following testimony:

> ALJ: I was reading Dr. Pucket[t]'s records and saw that he had ordered a MRI in 2012. Why did the MRI not occur in 2012?
> Goodwill: It was a $1,500 copay that had to be paid in advance. I didn't have it.
> ALJ: I also saw a gap in treatment from February 2, 2010 and March 7, 2011. Why did you have a period of time [w]here you stopped seeing Dr. Puckett?
> Goodwill: Obamacare. I had to switch insurance providers and the copay[s] were much higher than they were before and the deduc[t]ible that I just, when I needed something I would just call his nurse and she would order it th[r]ough him so I didn't have to go in
> ALJ: I also saw in 2012 that Dr. Pucket[t] wanted to try physical therapy. Why di[d]n't you do that?
> Goodwill: It was the copay. It would have been $30. I would have had to have done it three days a week. That's a week [of] grocery money.

R. 83. There may well be valid reasons for why the ALJ discounted this testimony, and, if that is the case, the ALJ is certainly free to outline them on remand so that the court will be in a position to conduct meaningful review.

expect, given the complaints of disabling symptoms and limitations." R. 28-29. Indeed, in the 2014 Function Report, Goodwill said she could bathe and dress, as well as prepare meals, fold laundry, and dust the house. R. 321-28. But, Goodwill also claimed that she used a cane to walk around the house, R. 327, that her husband brought her the laundry so that she could sit while folding it, R. 323, and that she cooked "in phases and [would] stop to rest," *id*. She and her husband confirmed that their movements were limited because Goodwill feared falling when she goes out alone and that Goodwill cannot tolerate sitting in a car for long periods. R. 324, 334. And, the photography of the birds from her bedroom window occurred while "us[ing] a tripod so [she] c[ould] sit in a chair." R. 325.

"[P]articipation in everyday activities of short duration, such as housework or fishing, [do not] disqualif[y] a claimant from disability." *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997). When determining whether the evidence of a claimant's daily activities is substantial enough to support the conclusion that she retains the RFC to work, an ALJ must consider the entire record. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). And, when the ALJ has already credited a medical condition that could give rise to the type of pain the claimant describes,[10] the ALJ cannot selectively choose parts of the claimant's testimony that belie a

---

[10] The ALJ acknowledged that Goodwill had "medically determinable impairments [that] could reasonably be expected to cause the alleged symptoms," but determined that Goodwill's activities were not "as limited as one would expect" given her complaints. R. 27.

disability while dismissing parts that indicate one. *Id.*[11] The ALJ's evaluation here that Goodwill's activities were not "as limited as one would expect" is not based on the whole record. In particular, the ALJ failed to address the limiting restrictions Goodwill alleged and does not explain why he rejected them. On this record, it seems the ALJ engaged in what at least two other circuits have described as "cherry-pick[ing] from . . . mixed results to support a denial of benefits." *Garrison v. Colvin*, 759 F.3d 995, 1017 n. 23 (9th Cir. 2014) (citing *Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011)).

On remand, the ALJ should evaluate the record as a whole and explain more clearly how he reached the conclusion that Goodwill's symptoms are not as limiting as she alleges and that she is capable of performing medium work.[12] The court of

---

[11] *See also Crow v. Colvin*, 36 F. Supp. 3d 1255, 1261-62 (N.D. Ala. 2014) (deeming the ALJ's determination a "mischaracterization of [the claimant's] description of her daily activities" where the ALJ cited household chores to discount pain while ignoring limitations); *Haugen v. Astrue*, 497 F. Supp. 2d 1315, 1327 (N.D. Ala. 2007) (finding a claimant's sporadic and limited activity, including cooking, shopping, light cleaning, and engaging in hobbies, did not preclude her experience of disabling pain); *Bennett v. Barnhart*, 288 F. Supp. 2d 1246, 1252 (N.D. Ala. 2003) (holding "it is not necessary for a plaintiff's pain to render her bedridden in order for her to be disabled . . . [rather] [i]t is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform minor household chores or drive short distances.");

[12] Goodwill contends also that the ALJ's determination was not supported by substantial evidence because he "relied on VE testimony, which was not based on a correct or full statement of [Goodwill's] limitations." Doc. 6 at 46-48. At issue is the ALJ's analysis in Step Four where he enlisted a VE to assess whether Goodwill could perform other work existing in significant numbers in the national economy. R. 54-61. Contrary to Goodwill's contention, the ALJ in fact asked hypothetical questions that included all of Goodwill's impairments. Though the first hypothetical question described an individual capable of performing medium work with no limitations other than climbing ladders and scaffolds, R. 59, his second hypothetical described an individual who could perform only light work, R. 60, and his final hypothetical individual could perform only light work and "would be unable to sustain sufficient concentration, persistence and pace for even simple tasks for an eight-hour workday on a regular basis," R. 61. The VE responded that the first

course expresses no opinion on the ultimate decision, and the decision to remand should not be read as such. After all, even if substantial evidence supports a finding that Goodwill is capable of performing light—but not medium—work, her disability claim would still fail based on the VE's testimony that sufficient light-work jobs exist in the national economy.

## F.

Finally, Goodwill contends that the ALJ is predisposed to deny social security and disability awards. Doc. 6 at 54-55. Goodwill alleges in part the ALJ's approval rate is roughly fifty percent less than that of his colleagues in Alabama, citing data from the Social Security Administration website.[13] *Id.* at 54. The ALJ's impartiality is "integral to the integrity of the system," *Miles v. Charter*, 84 F.3d 1397, 1401 (11th Cir. 1996), and "a presumption exists that judicial and quasi-judicial officers such as ALJs are unbiased," *Putnam v. Soc. Sec. Admin., Comm'r*, 705 F. App'x 929, 935 (11th Cir. 2017) (citing *Schweiker v. McClure*, 456 U.S. 188, 195 (1982)).

_____

hypothetical individual could perform all of Goodwill's past work as well as work in the national economy, the second hypothetical individual could do the same, but could not act as a registered nurse, and the third hypothetical individual could do none of the work described. *See* R. 59-61. The capacities of the ALJ's hypothetical individuals ran the gamut from someone who could perform no work to someone who could perform medium work with few limitations, sufficiently covering Goodwill's array of impairments in the process. The error here is the ALJ's failure to explain how he reached the determination that Goodwill had the RFC to perform medium work, rather than the hypotheticals he posed to the VE.

[13] The court notes that this is not the first instance in which Goodwill's representative has attempted to argue ALJ bias based on statistical analysis. As discussed below, Goodwill's representative unsuccessfully brought an identical claim before another judge in this district, and the Eleventh Circuit affirmed its dismissal. *See Putnam v. Colvin*, 2016 WL 5253215 (N.D. Ala. Sept. 22, 2016), *aff'd*, 705 F. App'x 929 (11th Cir. 2017).

A claimant may rebut this presumption only "by a showing of conflict of interest or some other specific reason for disqualification." *McClure*, 456 U.S. at 195-96; *see also Kelley v. Heckler*, 761 F.2d 1538, 1540-41 (11th Cir. 1985). In *Putnam*, the Eleventh Circuit rejected the exact argument now before this court, holding that the claimant failed to carry her burden because she "[did] not demonstrate[] that the ALJ failed to develop a full and fair record or carefully weigh the evidence . . . [and] without some particularized showing of a reason for disqualification, a generalized assumption of bias derived from the ALJ's low approval rate is insufficient to rebut the presumption of impartiality." 705 F. App'x at 936. Therefore, in light of Goodwill's failure to provide any specific evidence of purported bias or prejudice, rather than just statistical analysis with no context of the underlying decisions, Goodwill's final claim is unavailing.

## VI. CONCLUSION

Based on the foregoing, the court concludes that the ALJ's determination is not based on substantial evidence. Therefore, the Commissioner's final decision is **REVERSED** and **REMANDED** for the Commissioner to re-evaluate the entire medical evidence of record to determine Goodwill's residual functioning capacity and, if he reaches the same conclusion, to explain more fully how he determined that Goodwill can perform medium work. A separate order in accordance with the memorandum of decision will be entered.

**DONE** the 20th day of March, 2020.

ABDUL K. KALLON
UNITED STATES DISTRICT JUDGE